IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MARY L. PEREZ,                )
                              )
          Plaintiff,          )
                              )
     v.                       )       1:13CV324
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of        )
Social Security,              )
                              )
          Defendant.          )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Mary L. Perez ("Plaintiff"), proceeding pro se, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.

Presently before this court are Plaintiff's Motion for Judgment Reversal/Modification of Decision and accompanying brief (Docs. 12, 13, 21),[1] and the Commissioner's Motion for Judgment on the Pleadings and accompanying memoranda (Docs. 17, 18, 20). This court has before

---

[1] The court has endeavored to liberally construe Plaintiff's pro se pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

it the certified administrative record,[2] and this matter is now ripe for adjudication. After a careful consideration of the evidence of record, the decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court finds that remand is proper.

I. **BACKGROUND**

Plaintiff filed applications for DIB and SSI on April 16, 2009, alleging a disability onset date of October 12, 2007. (Tr. at 12, 39-42.) The applications were denied initially and upon reconsideration. (Id. at 39-61.) Plaintiff then requested a hearing before an ALJ. (Id. at 62-74.) At the June 15, 2011 hearing, Plaintiff proceeded without the assistance of counsel. (Id. at 24-38.)

After the hearing, the ALJ determined that Plaintiff was not disabled under the Act.[3] (Id. at 12-19.) The ALJ concluded that (1) Plaintiff had not worked during the relevant period, and (2)

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 10.)

[3] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Id.

-2-

Case 1:13-cv-00324-WO-JLW   Document 22   Filed 11/18/15   Page 2 of 17

Plaintiff had severe impairments, including "disorders of the back" and obesity. (Id. at 14.) However, the ALJ concluded that the disorders did not meet or equal a listed impairment. (Id.) The ALJ then determined that Plaintiff had the Residual Functional Capacity ("RFC")[4] to perform a full range of light work, but should not climb, should be limited to only occasional handling and crawling, should perform no work around unprotected heights and dangerous machinery, and should have a sit/stand option, as she could sit and stand for thirty minutes at a time. (Id. at 15-18.) Based on the fact that Plaintiff could perform all or substantially all of the exertional demands of light work, and given claimant's age as a "younger individual," and the fact that she had at least a high school education and could communicate in English, the ALJ found that the Medical-Vocational Guidelines directed a finding that Plaintiff is "not disabled." (Id. at 18-19 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.21).) Accordingly, the ALJ entered a decision that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63 (citation omitted).

Plaintiff was not disabled and denied Plaintiff benefits. (Id. at 19.)

Plaintiff requested that the Appeals Council review the ALJ's decision. (Id. at 7-8.) On December 14, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Id. at 4-6.) Plaintiff then initiated this action.

## II. LEGAL STANDARD

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines, 453 F.3d at 561. However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock, 667 F.3d at 472 (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal quotation marks omitted).

### III. **PLAINTIFF'S ASSERTIONS OF ERROR**

Plaintiff asks this court to reverse the decision of the Commissioner, and in support of her request, Plaintiff makes several arguments. First, Plaintiff asserts that the ALJ failed to properly consider issues related to her knees, uterine bleeding, and back. (Pl.'s Appellant Brief ("Pl.'s Br.") (Doc. 13) at 7.) Second, Plaintiff contends that the ALJ focused too intently on her obesity. (Id.) Third, Plaintiff contends that "new exhibits" demonstrate that her "ongoing medical issues . . . have not gotten better, but in fact, have progressively gotten worse." (Id.)

-5-

Moreover, upon review of the decision of the ALJ, it appeared to this court that the recent ruling of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), may be applicable. Consequently, the court afforded the parties an opportunity to brief the impact, if any, of Mascio on the ALJ's credibility analysis. The court has received and reviewed Plaintiff's briefing, the Commissioner's briefing, the entire record, and all additional pleadings. As explained below, remand is in order.

**IV. ANALYSIS**

Regarding credibility, Craig v. Chater provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. Id. at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them

-6-

to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged.  Id.  Where the ALJ has considered the relevant factors and has heard the claimant's testimony and observed claimant's demeanor, the ALJ's credibility determination is entitled to deference.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ completed the two-step Craig analysis, but committed error at step two.  First, the ALJ stated that he had "careful[ly] consider[ed]" the evidence and found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms . . . ."  (Tr. at 15-16.)  The ALJ therefore discharged his duty under the first step of the Craig analysis.

To understand how the ALJ erred at the second step of the Craig analysis, knowledge of a recently published case from the Fourth Circuit Court of Appeals is necessary.  Specifically, in Mascio v. Colvin, the Fourth Circuit found that an ALJ erred by using, at part two of the credibility assessment, "boilerplate" language that "the claimant's statements concerning the intensity, persistence and limiting effects of [his pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  780 F.3d at 639.  This method "'gets things backwards' by implying 'that ability to work is determined first and is then

used to determine the claimant's credibility.'" Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012)). Instead, "the ALJ here should have compared [the claimant's] alleged functional limitations from pain to the other evidence in the record, not to [the claimant's] residual functional capacity." Mascio, 780 F.3d at 639.

Here, the ALJ clearly erred at step two of the Craig analysis in the instant case by considering the credibility of Plaintiff's testimony through the use of the same objectionable "boilerplate" used in Mascio. Specifically, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 16.) The question, therefore, becomes whether the error is harmless.

Mascio is instructive on this issue as well. In Mascio, the Fourth Circuit explained what harmless error would look like in these circumstances, stating that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." Mascio, 780 F.3d at 639. The Fourth Circuit made it clear that an ALJ discharges this obligation when he "explain[s] how he decided which of [the claimant's] statements to believe and which to discredit." Id. at

-8-

640. However, in Mascio the ALJ failed to explain himself accordingly, except to make "the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity." Id. The lack of an explanation required remand. Id.

Therefore, per Mascio, the question here now becomes whether the ALJ explained how he decided which of the claimant's statements to believe and which to discredit. The court concludes that the ALJ failed in this regard and that remand is therefore in order.

More specifically, in this case, the ALJ's credibility analysis summarizes some, but not all, of Plaintiff's hearing testimony as to her alleged limitations:

> At the hearing, the claimant testified that she suffers from chronic low back pain. She stated that she has daily and daily [sic] back spasm[s] and rated her pain at 7-8 on a scale of 1-10. In addition, the claimant complained of bilateral knee pain. The claimant estimated that she could stand and walk comfortably for no more than 20 minutes. She estimated that she could sit for approximately 30 minutes. The claimant stated that she is able to drive a car but has difficulty focusing.

(Tr. at 15.)

Nevertheless, the ALJ did not mention Plaintiff's testimony that she could not climb; work around unprotected heights because of her balance; engage in repetitive bending, stooping, kneeling, crouching, or crawling; or carry more than three to five pounds. (Id. at 31-32.) Plaintiff testified further that she had trouble

-9-

focusing because of medication she took for pain and that she could not take that medication if she had to drive. (Id. at 33.) Plaintiff also testified that she suffered from uterine bleeding, causing a severe low blood count for which she had to have a blood transfusion, and that as a result there were instances "during the day that [she] would have to take a nap or just rest." (Id. at 36-37.) Consequently, given this selective recitation of Plaintiff's testimony, it is far from clear if the ALJ considered all of Plaintiff's hearing testimony.

The court is well aware that in most cases, a statement by the ALJ that he considered all of the evidence, is sufficient to demonstrate that the ALJ considered the entire record. See, e.g., Grubby v. Astrue, No. 1:09cv364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing Rappaport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir. 1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered)). The court notes too that here the ALJ said he considered the entire record, which would include Plaintiff's testimony. (Tr. at 15.) Nevertheless, given the ALJ's use of the objectionable boilerplate, his selective recitation of Plaintiff's testimony, and, as described below, his tacit adoption of some (but not all) of that testimony, the court cannot adequately review the

-10-

ALJ's credibility analysis. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."); see also Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that an ALJ is required to build an "accurate and logical bridge" between the evidence and his conclusions) (citation omitted).

More specifically, the ALJ seems to credit some of Petitioner's testimony while discounting other testimony. For example, Plaintiff testified that she could not climb or work around unprotected heights and the ALJ so limited her in the RFC. (Tr. at 15, 31-32.) Plaintiff also testified that she could only lift three to five pounds, had difficulties concentrating, and needed rests and naps during the workday; however, without meaningful explanation, the ALJ limited her to light work[5] and included no limitations on concentration or

---

[5] The court notes too that Plaintiff testified that she could stand "20 minutes tops." (Tr. at 32-33.) However, without explanation, the ALJ limited her to a sit/stand option of thirty, rather than twenty minutes. The ALJ therefore apparently also partially discredited Plaintiff's testimony regarding her ability to stand for twenty minutes at the most and concluded she could stand for thirty minutes.

-11-

accommodations for resting.[6] (Tr. at 15, 32-33, 37.) Light work requires frequently lifting up to ten pounds and occasionally lifting up to twenty pounds and therefore considerably exceeds the lifting and carrying capacity of three to five pounds to which Plaintiff testified. 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ does itemize some medical evidence in his joint RFC/credibility analysis. (Tr. at 15-18.) However, nowhere, other than the objectionable boilerplate (described above) and an additional insufficient statement (described below), does the ALJ explain how he decided which of Plaintiff's statements to believe and which to discredit.

It is true that in his decision, the ALJ stated that "[t]he claimant's testimony as well as the medical evidence reflects the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms." (Tr. at 16.) Yet, this sentence does not amount to a proper credibility analysis, because it does not explain how the ALJ decided which of Plaintiff's

---

[6] Additionally, the court observes that although Plaintiff testified that she took pain medication that impacted her ability to sustain concentration (Tr. at 33), the ALJ found that "[t]he claimant has not indicated any side effects to medications." (Id. at 16.) Consequently, this finding by the ALJ is not supported by substantial evidence and bolsters the court's decision to remand this matter for further proceedings.

-12-

statements to believe and which to discredit. Specifically, it is not clear from the sentence quoted above if the ALJ is referencing all of Plaintiff's testimony, or only the testimony the ALJ decided to set forth in his decision.  Nor is it clear from this sentence what medication or what medical records the ALJ is referencing. Moreover, this statement still does not explain why the ALJ credited some of Plaintiff's alleged limitations and discredited others.  All this compounds the court's concerns articulated above as to the ALJ's credibility analysis.  Consequently, the court concludes that the ALJ's credibility analysis is incomplete, not subject to review in the present form, and that this error is not harmless.[7]

---

[7] See, e.g., Roxin v. Comm'r, Soc. Sec. Admin., Civil No. SAG-14-2311, 2015 WL 3616889, at *2 (D. Md. June 5, 2015) (unpublished) (remanding where use of objectionable boilerplate language was deemed prejudicial); Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *9 (E.D.N.C. Aug. 13, 2015) (unpublished) ("Having failed to properly and thoroughly analyze Jones's credibility, ALJ Allen failed to cure any issue created from the use of problematic boilerplate language criticized in Mascio."); Carver v. Colvin, No. 1:13CV13, 2015 WL 4077466, at *10-12 (M.D.N.C. July 6, 2015) (unpublished) (recommending remand where the ALJ failed to articulate meaningful reasons beyond the objectionable boilerplate language); Thrasher v. Colvin, No. 7:13-CV-245-FL, 2015 WL 1431702, at *3-4 (E.D.N.C. Mar. 27, 2015) (unpublished) (remanding where use of objectionable boilerplate language and subsequent credibility analysis rendered it unclear why the ALJ credited some of the plaintiff's testimonial statements, but discounted others); Wright v. Colvin, No. 5:13-CV-686-D, 2015 WL 1275397, at *2 (E.D.N.C. Mar. 19, 2015) (unpublished) (remanding for further proceedings where the ALJ used the objectionable boilerplate language and failed to explain otherwise why he credited some and disregarded other portions of the plaintiff's testimony).

The court has an additional concern that weighs in favor of remand. Plaintiff argues that the ALJ overlooked evidence regarding her uterine bleeding, which caused low blood hemoglobin, in making his determination of no disability. (Pl.'s Br. (Doc. 13) at 7.) As briefly mentioned above, Plaintiff presented evidence of her uterine bleeding at the hearing. Specifically, the ALJ asked Plaintiff if she had "any other health problems." (Tr. at 36.) Plaintiff responded that she did "have additional medical issues" and that she was "seeing a doctor for it" and referenced "these [issues] on the last reports that were sent to [her] about additional medical information." (Id.) Plaintiff then stated that she "tend[s] to hemorrhage" from her uterus, that this "caused severe low blood count," and that, as a result, she had to "take double doses of iron pills and vitamin E . . . just to combat the fatigue." (Id.) Plaintiff also stated that there were instances during the day that she needed to take a nap or rest based on iron deficiency, that she lacked "energy," and that she had a blood transfusion due to the hemorrhaging. (Id. at 37.)

Despite this, the ALJ did not address uterine bleeding at any point in his decision. This is potentially problematic because the record contains multiple references to Plaintiff's uterine bleeding and the court is left to speculate as to why they were never addressed by the ALJ. For example, on May 23, 2007, before her alleged onset

-14-

date, Plaintiff was described as having a clinical history of "intermenstrual vaginal bleeding." (Tr. at 309.) Plaintiff also listed medroxyprogesterone as a medication she took for "prolonged menstruation" in a form supplied to the Commissioner (see id. at 188) and later she also listed that she was taking iron tablets twice daily for severe anemia (see id. at 209). Plaintiff also wrote in her additional medical information form that she had a low red blood cell count and received a transfusion at Baptist Hospital in Winston-Salem. (Tr. at 203.) This court is troubled by the ALJ's complete silence as to Plaintiff's uterine bleeding and resulting fatigue in his findings, especially given the above-mentioned deficiencies in the ALJ's credibility analysis.

Finally, the court does not find the Commissioner's arguments to the contrary persuasive. The Commissioner essentially argues that the ALJ's recitation of the objective medical evidence constituted a sufficient credibility analysis under Mascio. (Comm'r's Suppl. Br. (Doc. 20) at 2-5.) However, this assertion does not address the gravamen of the court's concern, which is that the court has been left to speculate as to why the ALJ credited some portions of Plaintiff's testimony, while discrediting other portions.

The Commissioner also essentially asserts that the ALJ did not overlook Plaintiff's uterine bleeding and, alternatively, that any

-15-

error was at most harmless. (Id. at 1, 5-7.) Instead, the Commissioner contends that the ALJ found Plaintiff's assertions of uterine bleeding so insignificant or unsupported as to not warrant any analysis whatsoever. (Id.) This is perhaps plausible, and the court expresses no opinion on the matter. Yet, again, when the ALJ declines to address testimony and evidence such as this on the record, the court is left in the untenable position of having to weigh evidence and testimony in the first instance and having to speculate as to the ALJ's intent. The court declines to do so in this case, especially in light of the Mascio error discussed above.

In sum, on remand the Commissioner should conduct a proper credibility analysis in light of the principles articulated in Mascio and should further address Plaintiff's allegations and any evidence of uterine bleeding. The court expresses no opinion regarding whether, at the end of the day, Plaintiff is disabled under the Act and the court declines consideration of the additional issues raised by Plaintiff at this time. Hancock v. Barnhart, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **REVERSED** and that the matter is **REMANDED**

under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further proceedings consistent with this order. To this extent, the Commissioner's Motion for Judgment on the Pleadings (Doc. 17) is **DENIED,** and Plaintiff's Motion for Judgment Reversal/Modification of Decision (Doc. 12) is **GRANTED.** To the extent that Plaintiff's motion seeks an immediate award of benefits, it is **DENIED.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 18th day of November, 2015.

_____
United States District Judge